## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 2:13-cr-00039-6 |
| | : | |
| MARK A. BRUNO | : | |
| | : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                        **MAY 6, 2014**

Presently before the Court is Defendant, Mark A. Bruno's ("Bruno") Motion to Dismiss and the Response in Opposition filed by the United States of America ("Government"). For the reasons set forth below, we deny the Motion to Dismiss.

## I.      BACKGROUND

This case involves criminal charges resulting from the federal investigation into an alleged widespread ticket-fixing scheme involving current or former Philadelphia Traffic Court ("Traffic Court") judges, the former Director of Records for the Traffic Court, and businessmen who had close relationships with various Traffic Court judges.[1]  See Indictment.  According to the Indictment, the Traffic Court was used by the alleged conspirators to give preferential treatment to certain ticketholders, most commonly by "fixing" tickets for those with whom they were politically and socially connected.  Id. ¶ 1.  Regarding the Defendants with positions at the Traffic Court, the Indictment charges that they:

> used their positions at Traffic Court to manipulate Traffic Court cases outside the judicial process, thereby achieving favorable

---

[1] Former Traffic Court Judges Fortunato N. Perri, Sr. ("Perri"), H. Warren Hogeland, and Kenneth Miller have pleaded guilty.  In addition, former Traffic Court Director of Records, William Hird ("Hird"), has pleaded guilty.

outcomes on traffic citations for politically connected individuals, friends, family members, associates, and others with influential positions.  This manipulation, or 'ticket-fixing,' consisted of: (1) dismissing tickets outright; (2) finding the ticketholder not guilty after a 'show' hearing; (3) adjudicating the ticket in a manner to reduce fines and avoid the assignment of points to a driver's record; and (4) obtaining continuances of trial dates to 'judge-shop,' this is to find a Traffic Court judge who would accede to a request for preferential treatment.

Id. ¶ 30.  According to the Indictment, "[i]n acceding to requests for 'consideration,' Defendants were depriving the City of Philadelphia and the Commonwealth of Pennsylvania of money which would have been properly due as fines and costs."  Id. ¶ 38.

Bruno is a magisterial district judge in Chester County, Pennsylvania.  (Bruno's Mem. Law Support Mot. to Dismiss at 2.)  He went to Traffic Court once a year, at the request of the Supreme Court of Pennsylvania, to hear cases while the regular Traffic Court judges were away for training.  (Id.)  The Indictment charges Bruno with the following: conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349;[2] wire fraud, and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343[3] and 2;[4] and mail fraud, and aiding and abetting mail fraud,  in

---

[2]18 U.S.C. § 1349, entitled "Attempt and Conspiracy," states:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1349.

[3]The wire fraud statute, 18 U.S.C. § 1343, provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

violation of 18 U.S.C. §§ 1341[5] and 2.

## II.   LEGAL STANDARD

"Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged." United States v. Huet, 665 F.3d 588, 594 (3d Cir. 2012).  "'It is well-established that '[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits.'" Id. at 594-95 (quoting United States v. Vitillo, 490 F.3d 314, 320 (3d Cir. 2007)).  The Court of Appeals for the Third Circuit ("Third

---

18 U.S.C. § 1343.

[4]Regarding the aiding and abetting charge, 18 U.S.C. § 2, entitled "Principals," states:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

[5]The mail fraud statute, 18 U.S.C. § 1341, provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C.A. § 1341.

Circuit") has previously held that "an indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" Id. at 595 (quoting Vitillo, 490 F.3d at 321). "'[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy.'" Id. (citing United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007)). "In contrast, if an indictment fails to charge an essential element of the crime, it fails to state an offense." Id. (citing United States v. Wander, 601 F.2d 1251, 1259 (3d Cir. 1979)).

"'Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to . . . ensur[e] that legally deficient charges do not go to a jury.'" Id. (quoting United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011)). "[T]he scope of a district court's review at the Rule 12 stage is limited." Id. "'[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.'" Id. (quoting United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)). In evaluating a Rule 12 motion to dismiss, the factual allegations set forth in the indictment must be accepted as true by the district court. Id. (citing United States v. Sampson, 371 U.S. 75, 78–79 (1962); United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990)). "'Evidentiary questions - such as credibility determinations and the weighing of proof - should not be determined at this stage.'" Id. (quoting Bergrin, 650 F.3d at 265 (internal marks and citation omitted)). "Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the

4

defendant committed the offense for which he was charged."  Id. at 595-96 (citations omitted).

## III.   DISCUSSION

Bruno moves to dismiss the Indictment against him.  (Bruno's Mem. Law Support Mot. to Dismiss at 7.)  Relying upon his limited involvement with the Traffic Court, Bruno states that the Indictment "makes scant mention of him" pointing out that he is specifically mentioned in the Indictment four times related to a handful of tickets issued to "J.M." and "L.R."  (Id. at 9.) (citing Indictment ¶ 48, at 16 (Manner and Means); ¶¶ 18 and 19, at 24; ¶ 40, at 29 (Overt Acts)).  In order to understand the charges against Bruno, a discussion of the tickets issued to J.M. and L.R. is required.

### A.   Tickets Issued To J.M. And L.R.

#### 1.   Ticket Issued To J.M.

According to Bruno, the Indictment alleges that Bruno asked Defendant Perri "for special assistance on a ticket issued to J.M."  (Bruno's Mem. Law Support Mot. to Dismiss at 9.) (citing Indictment ¶ 48, at 16)  Later, in the Overt Acts section, the Indictment alleges that in a telephone conversation on January 14, 2011, Bruno discussed "fixing" a citation received by J.M.  (Id.) (citing Indictment ¶ 18, at 24).  The Indictment then goes on to allege that Perri and Defendant Hird discussed Bruno's "request to 'fix' J.M.'s ticket" and "measures to remove any points assessed on the ticket."  (Id.) (citing Indictment ¶ 19, at 24).  Bruno discusses the fact that there is no further mention of the J.M. ticket in the Indictment, and that it does not allege that J.M.'s ticket was actually fixed.  (Id.)

The Government responds to Bruno's contentions by stating that the Indictment "alleges that in a telephone conversation on January 14, 2011, Bruno and Fortunato N. Perri, Sr. discussed

5

'fixing' a citation received by J.M." (Govt.'s Resp. Mots. to Dismiss at 9.) "During this same

call, Perri took credit for putting Bruno in Traffic Court to preside over cases." (Id.) "On the

same day, almost immediately after his discussion with Bruno, Perri discussed Bruno's request to

'fix' J.M.'s ticket with Hird." (Id.) "Both Hird and Perri discussed measures to remove any

points assessed on the ticket." (Id.) (citing Overt Acts, ¶¶ 18-19.)

## 2.    Tickets Issued To L.R.

Bruno points out that paragraph 40 of the "Overt Acts" section states that "on May 12,

2010, [Judge Bruno] adjudicated L.R.'s citations as not guilty." (Bruno's Mem. Law Support

Mot. to Dismiss at 9.) Based on this single allegation, Bruno argues that the Government

concludes that he committed both wire and mail fraud in violation of 18 U.S.C. § 1343 and 18

U.S.C. § 1341. (Id. at 9-10.) He also states that "[i]n Count Four, the indictment charges that

Judge Bruno committed wire fraud as to four L.R. tickets based on an alleged interstate telephone

conversation between Perri and Defendant Henry P. Alfano ("Alfano")." (Id. at 10.) "In Count

Fifty-Four, the indictment charges that Judge Bruno committed mail fraud related to two of these

same four tickets involving 'L.R.,' based on an alleged 'receipt mailed' by Perri on May 21,

2010." (Id.) Bruno states that there are no further factual allegations tying those charges to

Judge Bruno. (Id.)

The Government states that the Indictment charges that, "on March 6, 2010,

co-conspirator Alfano called Perri on the telephone to discuss an Oasis bus, driven by L.R.,

which had been impounded by the police." (Govt.'s Resp. Defs.' Mots. to Dismiss at 10.) The

Government states that a Philadelphia police officer issued two citations to L.R. for not having a

commercial driver's licence or a medical certificate. (Id.) Two additional tickets were issued to

the Oasis Gentleman's Club, the company that owned the bus, for failure to have a fire extinguisher and a warning device on the bus.  (Id.)  According to the Indictment, Perri told Alfano that he would "make it easy" to get the bus released.  (Id.) (citing Indictment, Over Acts, ¶ 35.)

The Government goes on to state that "[o]n March 7, 2010, Alfano provided Perri with information related to the citations.  Specifically, Alfano told Perri that the bus was registered to the Oasis Gentleman's Club, 6800 block of Essington Avenue, and the date that it was impounded."  (Id.)  According to the Government, "[t]he next day, in an interstate telephone call, Perri told Alfano that there were four tickets and 'you'll take care of that with me.'"  (Id.) Perri instructed Alfano that the owner and the driver of the bus should go to the Boot and Tow window at Traffic Court, ask for D.H., and state that 'they're there to pick up the bus [and] to get the bus released.'"  (Id.)  "Perri further instructed Alfano that co-conspirator Michael J. Sullivan would 'waive the collateral on the four tickets [and] they don't have to post that money.'" (Id.) "Lastly, Perri said, 'and then you'll give me those four matters,' referring to the citations."  (Id.) (citing Indictment, Overt Acts, ¶¶ 36-37.)

The Government states that "[o]n May 7, 2010, Perri and Hird had a telephone conversation discussing citations which Alfano wanted fixed."  (Id.)  According to the Government, "Perri said, 'I got a matter for the twelfth.  It's one of Eddie's (Alfano) . . . .  There is another one here just mailed.  It is a two ticket thing.'"  (Id.)  The Government goes on to state that "Hird said that he had another one of Eddie's on the tenth" and "[h]e said that he did not know who (which Traffic Court judge) is in there, but we'll see . . . but we'll figure it out. . . I'll work it out."  (Id. at 10-11) (citing Indictment, Overt Acts, ¶ 10.)  On May 12, 201, defendant

Mark Bruno adjudicated L.R.'s citations as not guilty. (Include footnote?)  (Id. at 11) (citing Indictment, Overt Acts, ¶¶ 39-40.)

     **B.**     **Bruno's Motion To Dismiss**

     Bruno moves for dismissal of the counts against him based upon the following grounds: (1.) the Indictment fails to allege the essential elements of conspiracy to commit wire and mail fraud; (2.) the Indictment fails to allege the essential elements of wire fraud; and (3.) the Indictment fails to allege the essential elements of mail fraud.[6]  We find Bruno's arguments to be without merit, and deny his Motion to Dismiss.  We will address each argument in turn.

     **1.**     **The Indictment Alleges The Essential Elements Of Conspiracy To Commit Wire and Mail Fraud**

     Count One of the Indictment charges all Defendants with conspiracy to commit wire and mail fraud.  The elements of conspiracy to commit wire and mail fraud are the following: (1) an agreement between two or more persons to commit mail or wire fraud; (2) the defendant knowingly joined the conspiracy; and (3) one of the conspirators committed an overt act in furtherance of the conspiracy.[7]  See United States v. Fumo, 2008 WL 1731911, at *2 (E.D. Pa. Apr.10, 2008) (citing United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002)).  In order to

---

     [6]Bruno includes a fourth ground for dismissal arguing that the Indictment does not allege a money or property interest that would support a wire or mail fraud prosecution.  (Bruno's Mem. Law Support Mot. to Dismiss at 16-20.)  In United States v. Sullivan, No. 13-cr-39, 2013 WL 3305217, at *10 (E.D. Pa. July 1, 2014), we addressed this issue concluding that the Indictment adequately alleges that Defendants engaged in a scheme to defraud the Commonwealth of Pennsylvania and the City of Philadelphia of money in costs and fees.  Therefore, we deny Bruno's Motion to Dismiss based upon this argument for the reasons enumerated in our United States v. Sullivan opinion.  Likewise, to the extent that Alfano has joined Bruno's Motion to Dismiss concerning this issue, the Motion is, likewise, denied.  (See Alfano's Mot. to Join Part D of Bruno's Mot. to Dismiss.)

     [7]The same legal analysis applies to both the mail and wire fraud statutes because they share the same relevant language.  See Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987) (noting that "[t]he mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here").

adequately allege a conspiracy, "the government must show 'that the alleged conspirators shared

a unity of purpose, the intent to achieve a common goal, and an agreement to work together

toward the goal.'"  United States v. Holmes, 387 F. App'x 242, 245 (3d Cir. 2010) (quoting

United States v. Reyeros, 537 F.3d 270, 277 (3d Cir. 2008)).  Due to the fact that conspiratorial

agreements are rarely axiomatic,

> [t]he existence of a conspiracy can be inferred from evidence of
> related facts and circumstances from which it appears as a
> reasonable and logical inference [ ] that the activities of the
> participants . . . could not have been carried on except as the result
> of a preconceived scheme or common understanding.

Id. at 245 (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)).  The discussion of

Bruno's argument requires a separate analysis of the Indictment charges relating to the J.M.

ticket and the L.R. tickets.  As such, we address the tickets issued to J.M. and L.R. in turn.

### a.   *The J.M. Ticket*

Regarding the J.M. ticket, Bruno argues that it does not form the basis of any of

the substantive counts of wire or mail fraud.  (Bruno's Mem. Law Support Mot. to Dismiss at

11.)  Bruno argues that the references to the J.M. ticket, found in ¶¶ 18 and 19 of the Overt Acts

Section of Count One, do not cite to an interstate wire or mailing.  (Id. at 10-11.)  The

Government agrees with Bruno and states that "[t]he Indictment does not cite to any interstate

wire or mailing with respect to J.M.'s ticket because the indictment does not charge any

substantive counts of wire fraud or mail fraud for the J.M. ticket."  (Govt.'s Resp. Defs.' Mots. to

Dismiss at 17 n.5)  Consequently, Bruno's Motion to Dismiss the substantive counts of wire or

mail fraud regarding the J.M. ticket is denied as moot.

The Government states that "[t]he recitation of facts found in ¶¶ 18 and 19 are

simply overt acts, that is, some type of outward, objective action performed by one of the parties to, or one of the members of, the agreement or conspiracy which evidence that agreement." (Id. at 17.)  Bruno alleges that the allegations relating to the J.M. ticket are due to the Government's "kitchen sink" approach to the conspiracy count and do not belong in the Indictment.  (Bruno's Mem. Law Support Mot. to Dismiss at 11.)  Bruno's Memorandum of Law In Support of Motion to Dismiss includes a Motion to Strike the J.M. allegations under Federal Rule of Criminal Procedure 7(d) arguing that they do not form the basis of a valid independent theory of criminal liability and could lead to juror confusion and, ultimately, unfair prejudice to Judge Bruno.[8]  (Id. at 7 n.3.)  The Government counters by arguing that the overt acts regarding the J.M. ticket reflect the telephone conversations in which Bruno and Perri discuss fixing a ticket for J.M., and Perri calling Hird in which they discuss the possible fixing of J.M.'s ticket.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 18.)  These over acts, the Government contends, "are evidence of a close corrupt relationship and an agreement among the co-conspirators showing the conspiracy at work, and consequently are relevant and admissible at trial."  (Id.)

　　Upon consideration of the parties' arguments, we conclude that the J.M. ticket allegations are relevant to the conspiracy charges in the Indictment and shall, therefore, not be sticken pursuant to Federal Rule of Criminal Procedure 7(d).  When reviewing the Indictment as a whole alleging one conspiracy involving all of the Defendants, the J.M. ticket allegations can be considered as actions by Bruno, Perri and Hird in furtherance of the alleged conspiracy as a

---

[8]Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  Allegations are stricken as surplusage when they are both irrelevant (or immaterial) and prejudicial.  See United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006).

whole.  "A conspiracy is a continuing offense and a jury may consider each and all of a defendant's actions in furtherance of the conspiracy so long as the indictment is brought within five years of the last overt act."  United States v. Jake, 281 F.3d 123, 130 (3d Cir. 2002).  With the aid of jury instructions, any potential juror confusion or unfair prejudice is unlikely.

Since the Government admits that the Indictment does not charge any substantive counts of wire fraud or mail fraud for the J.M. ticket, Bruno's Motion to Dismiss Count I regarding the J.M. ticket is denied as moot.  Likewise, for the reasons above, we deny Bruno's Motion to Strike the J.M. ticket allegations under Federal Rule of Criminal Procedure 7(d).

### b.  The L.R. Tickets

Relying on the fact that Indictment simply states that he "adjudicated the L.R. citations as not guilty," Bruno argues the following points: there is no evidence that he did anything criminal; the Indictment does not show a unity of purpose for Bruno with his co-conspirators;  the Indictment shows no contact with his Co-Defendants; and there is no circumstantial evidence that he was involved in fixing tickets.  (Bruno's Mem. Law Support Mot. to Dismiss at 9.)  Bruno states that "[t]here are no allegations that he spoke to any of the other defendants or alleged conspirators regarding the L.R. citations."  (Id.) (citing Indictment ¶ 40, at 29.)  The Government responds by stating that the argument by Bruno raises the type of issues that can only be argued after completion of the Government's case because it addresses the weight of the evidence, including circumstantial evidence, of the Indictment.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 15.)  The Government further contends that the Motion should be denied because there is clear direct and circumstantial evidence of a conspiratorial relationship among Bruno, Perri and Hird to fix tickets.  (Id. at 16.)  The Government states:

11

on March 6, 2010, Alfano called Perri about L.R.'s ticket for driving a bus without having the required commercial driver's license and medical certificate.  On March 7, 2010, Perri told Alfano that he would take care of these tickets.  On May 7, 2010, Perri told Hird that he wanted certain tickets fixed including one of Alfano's tickets on May 12, 2010, in Truck Court.  Hird told Alfano that he was not sure who was in Truck Court, but 'we'll figure it out.  I'll work it out.'  On May 12, 2010, L.R. and an associate of Alfano went to Truck Court and appeared before Defendant Bruno.  L.R. pled not guilty but presented no defense or explanation to the charges.  Despite this lack of opposition to the charges, Defendant Bruno found L.R. not guilty.  Furthermore, on January 14, 2011, Bruno called Perri and talked about fixing a ticket issued to J.M. In that same conversation, Bruno admitted that he has approached Hird about this same ticket fix for J.M. Immediately after this conversation, Perri called Hird about J.M.'s ticket.  Hird acknowledged forgetting about Bruno's request of a ticket fix for J.M. because Bruno had given him the information at a party on a small scrap of paper.

(Id. at 16.) (footnote omitted)

As previously discussed, the district court's review of a defendant's motion to dismiss is a "narrow, limited analysis geared only toward ensuring that legally deficient charges do not go to a jury."  Bergrin, 650 F.3d at 268.  The district court must dismiss a charge only "if 'the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'"  Id. at 271 (quoting United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)).  The analysis may not include an inquiry into what the Government will ultimately be able to prove at trial.  Id.

Regarding Bruno's argument pertaining to the sufficiency of the Government's evidentiary support, we note that a  motion to dismiss is not a permissible vehicle for addressing the sufficiency of the government's evidence.  Id. at 265 (quoting United States v. DeLaurentis, 230 F.3d 659, 660–61 (3d Cir. 2000).  Therefore, we do not entertain any arguments regarding

the sufficiency of the Government's evidence against Bruno.

Accepting as true the factual allegations in the Indictment, see Bergrin, 650 F.3d at 268, we conclude that the Indictment sufficiently alleges the elements of the conspiracy offence set forth against Bruno.  Regarding the charge of a conspiracy involving mail and wire fraud, 18 U.S.C. §§ 1341, 1343, the Indictment alleges that all of the Defendants, including Bruno, did the following:

> conspired and agreed, together and with others known and unknown to the grand jury, to commit offenses against the United States, that is, . . . to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice.

(Indictment, Count 1, ¶ 27(a), (b).)  The Indictment further alleges that local politicians and politically influential people asked Traffic Court judges or administrators for preferential treatment on citations issued to constituents, relatives, friends and associated.  (Id. ¶ 28.)  It further states that Bruno, along with the other Defendants who held positions with the Traffic Court, "furthered and accepted those requests for preferential treatment because of political support (past, present, and future), business, social, or other relationship with the ticketholder, or opportunity to obtain some form of personal benefit."  (Id., ¶ 29.)  In order to provide the requested preferential treatment, the Indictment states that the Defendants, including Bruno, who held positions at Traffic Court:

> used their positions at Traffic Court to manipulate Traffic Court cases outside the judicial process, thereby achieving favorable outcomes on traffic citations for politically connected individuals, friends, family members, associates, and others with influential positions.  This manipulation, or 'ticket-fixing,' consisted of: (1) dismissing tickets outright; (2) finding the ticketholders not guilty after a 'show' hearing; (3) adjudicating the ticket in a manner to

13

> reduce fines and avoid the assignment of points to a driver's
> record; and (4) obtaining continuances of trial dates to 'judge-
> shop,' that is find a Traffic Court judge who would accede to a
> request for preferential treatment.

(Id. ¶ 30.)  In the Overt Acts section, the Indictment alleges that, in March 2010, Alfano and Perri

communicated through interstate telephone calls about fixing tickets issued to L.R.  (Id., Overt

Acts ¶¶ 35-37.)  The Indictment states that "[o]n or about May 10, 2010, Defendant Mark Bruno

adjudicated L.R.'s citations as not guilty."  (Id. ¶ 40.)  Also, as the Government points out, the

Overt Acts section includes allegations that, during a phone conversation, Bruno asked Perri for

special assistance on a ticket issued to J.M.  (Id. ¶ 18.)

  As previously explained, a conspiracy's existence can be inferred from evidence of

related facts and circumstances from which a reasonable and logical inference that the activities

of the participants could not have occurred except due to a  preconceived scheme or common

understanding.  See Holmes, 387 F. App'x at 245 (citation omitted); see also United States v.

Helbling, 209 F.3d 226, 238 (3d Cir. 2000) ("Circumstantial evidence may be used to establish a

conspiracy although if the government relies entirely on circumstantial evidence the inferences

drawn must have a logical and convincing connection to the facts established.")  Accepting as

true all factual allegations based on a "common sense construction" of the language of the

Indictment, see United States v. Hodge, 211 F.3d 74, 76 (3d Cir.2000), we conclude that the

conspiracy charge against Bruno should not be dismissed.  The Indictment sufficiently apprises

Bruno of the charges against him and would enable him to invoke any bar to double jeopardy.

Consequently, Bruno's Motion to Dismiss Count I is denied.

**2.**       **Count Four Alleges the Essential Elements of Wire Fraud**

  Count Four charges Bruno with wire fraud and aiding and abetting wire fraud.

14

Count Four alleges that Bruno, Alfano, Hird, and Mulgrew were involved in wire fraud regarding an Interstate telephone call occurring on March 8, 2010, concerning tickets #3-#6 (L.R. /Oasis). (Indictment, Wire Fraud Counts, Count 4.)  The Indictment states that the interstate phone call was between Perri, in Pennsylvania, and Alfano, in New Jersey, and concerned fixing four tickets issued to L.R. and the Oasis Gentleman's Club, 6800 block of Essington Avenue, that were previously discussed by the men during a phone conversation on March 6, 2010.  (Id., Overt Acts, ¶¶ 35-37.)  The Indictment includes allegations that Hird, Perri and Alfano discussed ways to fix and maneuver the four tickets through Traffic Court.  (Id. ¶¶ 35-47.)  "On or about May 12, 2010, Defendant Mark Bruno adjudicated L.R.'s citations as not guilty."  (Id. ¶ 40.)  "On or about September 8, 2010, defendant Robert Mulgrew adjudicated the Oasis citation V00311161 guilty and the Oasis citation V00311172 not guilty."  (Id. ¶ 47.)

"To obtain a conviction for wire fraud under 18 U.S.C. § 1343, the Government must prove '(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme.'"  United States  v. Andrews, 681 F.3d 509, 528 (3d Cir. 2012) (quoting United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001)).  "[T]he statute does not require that the defendant himself sent the communication or that he intended that interstate wire communications would be used."  Id.  "Rather, § 1343 requires that the defendant 'knowingly caused' the use of interstate wire communications."  Id. (citing United States v. Bentz, 21 F.3d 37, 40 (3d Cir. 1994)).  "'Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used.'"  Id.

(quoting <u>Bentz</u>, 21 F.3d at 40).

   Bruno argues that Count Four charging him with wire fraud relating to L.R.'s ticket should be dismissed.  (Bruno's Mem. Law Support Mot. to Dismiss at 13-14.)  In support of his assertion, Bruno argues as follows: the Indictment merely repeats the statutory wire fraud language, only ¶ 40 of the Indictment connects Bruno to the L.R. ticket; there is no direct or circumstantial evidence connecting Bruno to the fraudulent ticket-fixing scheme; and it was not reasonably foreseeable to Bruno that an interstate telephone call would be made in furtherance of the scheme.[9]  (<u>Id.</u>)

   The Government asserts that Bruno is wrong.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 15.)  Specifically, the Government argues that Bruno's argument is premature, and impermissibly premised upon trial issues.  (<u>Id.</u> at 19.)  Relying upon the Overt Acts ¶¶ 18-19 and 35-40, the Government argues that the Indictment not only states the statutory language of the wire fraud statute, but also incorporates all of the overt acts relating to Bruno in Count One.  (<u>Id.</u>)  According to the Government, the overt acts listed in the Indictment pertaining to Bruno establish the following:

> a conspiratorial relationship among Bruno, Perri, and Hird to fix traffic tickets considering their conversation alone; a not guilty finding by Bruno on a traffic ticket arranged to be fixed by Alfano, Perri, and Hird; and a conversation between Bruno and Perri in which Bruno discusses his own requested ticket-fix of J.M.'s ticket; in this conversation he makes it clear that he requested that Hird fix the ticket and asks Perri to find out what happened to his request.

---

[9] Bruno makes most of the same arguments regarding the mail fraud charges against him.  (Bruno's Mem. Law Support Mot. to Dismiss at 14-16.)  Regarding Bruno's arguments pertaining to the first two elements of the wire fraud statute, our analysis equally applies to Bruno's interchangeable arguments made with respect to the mail fraud charge against him.  We will separately address Bruno's argument that it was not reasonably foreseeable to him that the mail might be used in furtherance of the scheme to defraud.

(Id.)  The Government states that "[t]hese allegations, which must be accepted as true at this stage, connect Bruno to the L.R. ticket itself and are direct and circumstantial evidence connecting Bruno to the ticket-fixing scheme to defraud."  (Id.)  Responding to Bruno's argument that it was not reasonably foreseeable to Bruno that an interstate telephone call would be made in furtherance of the scheme, the Government argues that "the allegations in the indictment show that it was reasonably foreseeable to Bruno that wire communications, including a telephone call, might be used in furtherance of the scheme to defraud, because Bruno himself used a phone call to attempt to fix a ticket."  (Id. at 33.)

        Since a  motion to dismiss is not a permissible vehicle for addressing the sufficiency of the evidence by the Government, see Bergrin, 650 F.3d at 265, we will not entertain any of Bruno's arguments regarding the sufficiency of the Government's evidence. Accepting as true the factual allegations in the Indictment, see id., we conclude that the Indictment sufficiently alleges the elements of the wire fraud offence against Bruno.  Based on an interstate telephone call that occurred on March 8, 2010, the Indictment alleges that Bruno, Alfano, Hird and Mulgrew:

> devised a scheme to defraud the City of Philadelphia and Commonwealth of Pennsylvania, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted, and aided and abetted the transmission of, by means of wire communication in interstate commerce, the signals and sounds described below.

(Indictment ¶ 3.)  The Indictment further identifies the means by which Bruno, and the other named Defendants, committed the offense: use of the telephone and agreeing to fix L.R.'s ticket with Bruno allegedly having carried out the offense by adjudicating the L.R. ticket as not guilty.

17

(Id., Overt Acts, ¶¶ 35-47.)

There is sufficient factual orientation in the Indictment to permit Bruno to prepare his defense and invoke double jeopardy.  See Huet, 665 F.3d at 595.  Count Four contains the elements of wire fraud, the underlying factual circumstances, and citations to 18 U.S.C. § 1343 and 2.  See Fed. R. Crim. P. 7(c)(1) (requiring indictment to include concise statement of facts and citation to law the defendant allegedly violated).  Reviewing the Indictment using a common sense construction, we conclude that the wire fraud charge against Bruno should not be dismissed.

Likewise, we reject Bruno's argument that it was not reasonably foreseeable to him that wire communications, including a telephone call, might be used in furtherance of the scheme to defraud.  The Government points out that it must prove that a wire transmission was in fact used in some manner to further the scheme to defraud, and that Bruno used wire communication, or that he knew the use of the wire communication would follow in the ordinary course of business, or that he should reasonably have anticipated that wire communication would be used.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 20 n.7.)  In order to prove such, the Government relies upon the alleged fact that Bruno used a phone call to attempt to fix the ticket issued to J.M.  (Id.)  Relying upon the January 14, 2011 telephone call from Bruno to Perri in which he talked to Perri about fixing a ticket, the Government argues that "[t]he use of the wires to pursue his own ticket-fix for J.M. makes the use of the wires in the ticket-fix for L.R. reasonably foreseeable for Bruno."  (Id.)

Regarding Count Four, the Indictment states that Bruno, along with Alfano, Hird, and Mulgrew, executed the scheme to defraud "knowingly caused to be transmitted, and aided and abetted the transmission of, by means of wire communication in interstate commerce"

18

relating to the March 8, 2010 interstate telephone call.  (Indictment, Wire Fraud, Count 4.)  The allegation that Bruno used a telephone to call Perri in order to fix a ticket for J.M. can be used to infer that it was reasonably foreseeable to Bruno that wires were used in the commission of the alleged wire fraud.  Accepting the Indictment as true, the Indictment contains sufficient facts to allege that the specific count of wire fraud against Bruno.[10]  Bruno's Motion to Dismiss Count Four is denied.

### 3.  Count Fifty-Four Alleges The Essential Elements of Mail Fraud

Count Fifty-Four charges Bruno and Alfano with mail fraud and aiding and abetting mail fraud regarding a receipt mailed on May 21, 2010, concerning Ticket #3 and #4 (L.R.).  (Indictment, Mail Fraud, ¶ 54.)  As previously explained, the Indictment alleges that Hird, Perri and Alfano discussed ways to fix and maneuver tickets issued to L.R. through Traffic Court with Bruno adjudicating the two citations as not guilty on May 12, 2010.  (Id., Overt Acts, ¶¶ 35-40, 47.)  The Government alleges the use of the mail by stating that "[o]n or about May 21, 2010, Fortunato N. Perri, Sr. told defendant Henry P. Alfano that he was mailing defendant Alfano two receipts, and 'you got a couple more coming.'"  (Id., Overt Acts, ¶ 43.)

"A conviction under the mail or wire fraud statute requires that three elements be proven: (1) 'the existence of a scheme to defraud'; (2) 'the use of the mails in furtherance of the fraudulent scheme'; and (3) 'culpable participation by the defendant.'"  Fumo, 628 F. Supp. 2d at

---

[10]The Government points out that if not guilty as a principal, Bruno's actions facilitated the ticket-fixing scheme sufficient to convict him of aiding and abetting the charged fraud.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 20 n.7.)  In order to establish a violation of 18 U.S.C. § 2, the Government "must prove that 'the defendant charged with aiding and abetting that crime knew of the commission of the substantive offense and acted with the intent to facilitate it.'"  United States v. Carbo, 572 F.3d 112, 118 (3d Cir. 2009) (quoting United States v. Kemp, 500 F.3d 257, 293 (3d Cir. 2007)).  Bruno's Motion to Dismiss does not address Count Four as it relates to the charge of aiding and abetting, and we do not address it.

582 (quoting United States v. Pearlstein, 576 F.2d 531, 534 (3d Cir. 1978)).  "The 'in furtherance of' language in § 1341 encompasses both causation (focusing on 'knowledge and foreseeability') and purpose (focusing on the nexus between the [mailing] and the fraud)."  Id. (quoting Bentz, 21 F.3d at 40 n.3).  "A defendant must knowingly cause the use of the mails, and the mailing must be for the purpose of executing the scheme."  Id. (quoting United States v. Tiller, 302 F.3d 98, 101 (3d Cir. 2002);  Kann v. United States, 323 U.S. 88, 94 (1944); 18 U.S.C. § 1341)).

Challenging the Indictment with respect to the third element, Bruno contends that the Indictment is insufficient to establish that he knowingly caused the use of the mails because Count Fifty-Four charges him with mail fraud with a "receipt" mailed on May 21, 2010, related to the L.R. Tickets. (Bruno's Mem. of Law Support Mot. to Dismiss at 14-16) (citing Indictment, Count 54, at 65.)  Bruno states that it is evident that he was not involved in the actual mailing of any "receipt" related to the L.R. citations.  (Id. at 15.)  He states that the Indictment does not allege that he knew about the mailing of the "receipts," and could not have known that they would be mailed in the ordinary course of business, or reasonably foreseen it, because they were not mailed in the ordinary course of business of the Traffic Court.  (Id.) (citing Indictment  ¶ 42, at 14-15).  In support of his argument, Bruno refers to the following paragraph of the Indictment:

> Typically, after a citation was adjudicated, defendant William Hird provided a computer printout from the Traffic Court computer system of the case disposition to Fortunato N. Perri, Sr., which Perri referred to as a 'reciept.'  Perri, in turn, mailed these 'receipts' to defendant Henry P. Alfano or directly to the ticketholder as confirmation that the citation had been dismissed or otherwise disposed of.  **These 'receipts' were not provided in the regular course of business by Traffic Court to ticketholders.**

(Id.) (Indictment ¶ 42, at 14-15).  Bruno asserts that he was not involved in the actual mailing, and there is no way he could have known or foreseen that Perri would send the L.R. "Receipt" to

Alfano, thus, the Indictment fails as to the third element of the mail fraud count against him.  (Id. at 15-16.)  The Government argues that Bruno's Motion to Dismiss regarding Count Fifty-Four should be denied because "as a co-schemer, as with a co-conspirator, knowing participation in the scheme makes Bruno 'legally liable' for the use of the mails or wires by his co-schemers, Perri and Alfano."  (Govt.'s Resp. Mot. to Dismiss at 22) (citing United States v. Stapleton, 293 F.3d 1111, 1117 (9th Cir. 2002); United States v. Leahy, 445 F.3d 634, 656 (3d Cir. 2006)).

   Regarding Count Fifty-Four, the Indictment charges that Bruno and Alfano:

> devised a scheme to defraud the City of Philadelphia and
> Commonwealth of Pennsylvania, and to obtain money and property
> by means of false and fraudulent pretenses, representations, and
> promises, for the purpose of executing the scheme to defraud, and
> attempting to do so, knowingly took, received, and aided and
> abetted the taking and receiving, from an authorized depository for
> mail matter, and caused to be delivered, and aided and abetted the
> delivery of, by the United States mail, according to directions
> thereon.

(Indictment ¶ 3, at 64-65.)  Regarding Ticket #3 and Ticket #4 issued to L.R., the Indictment alleges that Bruno adjudicated one of the tickets as not guilty in accordance with the alleged scheme with Perri mailing Alfano two "receipts" in furtherance of the ticket-fixing scheme.  (Id., Mail Fraud, Count 54.)  While it is not alleged that Bruno himself mailed the "receipts," as an alleged co-schemer, Bruno, as a knowing participant the scheme, can be held legally liable for his co-schemers use of the mails.  See Leahy, 445 F.3d at 656 ("[W]e have apparently not yet addressed the circumstances in which a co-schemer instruction may be properly given.  We note, however, that the Ninth Circuit has addressed co-schemers liability in some detail.") (citing Stapleton, 293 F.3d 11147 (relying upon principles of vicarious liability for co-conspirators stating that "[l]ike co-conspirators, knowing participants in the scheme are legally liable for their

co-schemers use of the mails or wires")); see also United States v. Ward, 486 F.3d 1212, 1222

(11th Cir. 2007) ("For nearly as long as mail fraud has been a federal crime, it has been the law

in this Circuit, and in the former Fifth Circuit, that a defendant may be convicted of mail fraud

without personally committing each and every element of mail fraud, so long as the defendant

knowingly and willfully joined the criminal scheme, and a coschemer used the mails for the

purpose of executing the scheme."); United States v. Kelly, 507 F. Supp. 495, 504 n.15 (E.D. Pa.

1981) ("It is well settled . . . once the existence of a scheme to defraud is established . . . that

when one coschemer utilizes the mails in furtherance of the scheme to defraud, all other

coschemer are thereby implicated."); United States v. Tiche, 424 F. Supp. 996, 1003 (D.C. Pa.

1977) ("It is clear that individual participants in a mail fraud scheme are liable for acts of agents

and co-conspirators unless there is some affirmative withdrawal on the part of the former, and

this specifically includes defendant's responsibility for letters which another member of the

scheme caused to be mailed in execution of the scheme."); United States v. Bloom, 78 F.R.D.

591, 599 (D.C. Pa. 1977); United States v. Schall, 371 F. Supp. 912, 929 (W.D. Pa. 1974) ("'It is

not necessary that a defendant, charged with mail fraud violations, actually cause the mailings, so

long as there is sufficient evidence which shows his activity is connected with the fraudulent

scheme which involves the use of the mails.")

    Accepting the Indictment as true, the Indictment contains sufficient facts to allege

the specific count of mail fraud against Bruno.[11]  Bruno's Motion to Dismiss Count Fifty-Four is

---

[11]Similar to its wire fraud count against Bruno, Count Fifty-Four includes an aiding and abetting charge. (Gov't.'s Resp. Defs.' Mots. to Dismiss at 22.)  Bruno's Motion to Dismiss does not address Count Fifty-Four as it relates to the charge of aiding and abetting, and we do not address it.

denied.[12]

## IV.   <u>CONCLUSION</u>

The Court concludes that the Indictment in this case properly charges Bruno with

conspiracy to commit wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, 1349.

Likewise, it properly charges Bruno with having devised or intended to devise a scheme to

defraud by means of wire and mail communications, and aided and abetted such crimes, in

violation of 18 U.S.C. §§ 1341 and 2, 18 U.S.C. §§ 1343 and 2.  Accordingly, the Court denies

Bruno's Motion to Dismiss the Indictment.  We, also, deny Bruno's Motion to Strike the J.M.

ticket allegations under Federal Rule of Criminal Procedure 7(d).

An appropriate Order follows.

---

[12]The Government's Response includes the argument that the mailings regarding the L.R. tickets "were important to the continuing honest services fraud between Alfano and Perri, in which Alfano would supply Perri with such things as car repairs, videos, and food, and Perri would in turn supply Alfano with ticket fixes on his requested calls.  (Govt.'s Resp. Defs.' Mots. to Dismiss at 22 n.11.)  We note that honest services fraud is not involved in this action, and we do not consider it.